FILED
2000 SEP -7
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

LARRY STICKLES,

    Plaintiff,

v.

WILLIAM S. COHEN, SECRETARY OF
DEFENSE,

    Defendant.

CIVIL ACTION NO.
99-B-3203-NE

ENTERED
SEP -7 2000

### MEMORANDUM OPINION

Currently before the court are defendant's Motion to Dismiss and Supplemental Motion to Dismiss Equal Pay Act Claim, filed by defendant William S. Cohen, Secretary of Defense ("defendant"). Plaintiff Larry Stickles ("plaintiff" or "Stickles"), a male over the age of forty who was formerly employed by the Defense Intelligence Agency, alleges that he was discriminated against by defendant and asserts the following: (1) an Equal Pay Act ("EPA") claim, (Complaint ("Compl."), Count One, ¶¶ 20-22); (2) an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), (*id.*, Count Two, ¶¶ 23-25); (3) a retaliation and reprisal claim under no stated act or provision; (*id.*, Count Three, ¶¶ 26); (4) a § 1983 claim for violation of his due process rights, (*id.*, Count Four, ¶¶ 27-51); and (5) a nonspecific cliam under Title VII of the Civil Rights Act of 1964, (*id.*, Count Five, ¶¶ 52). Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motions to Dismiss are due to be granted.

## I. FACTUAL SUMMARY

In November of 1985, the Missile and Space Intelligence Center ("MSIC"), a division of the United States Army Intelligence Agency, offered plaintiff a position as a Branch or Division Chief of the Product Media Division (MSC-3D) in Huntsville, Alabama. (Complaint ("Compl.") at ¶¶ 1-2; Aff. of Larry M. Stickles ("Stickles Aff.") at p. 1.) This position entailed a GG-13 pay grade.[1] (Compl. at ¶ 2.) On January 2, 1992, MSIC became part of and under the administrative control of the Department of Defense ("DOD"), and, more specifically, the Defense Intelligence Agency ("DIA"). (Compl. at ¶ 3; Stickles Aff. at p. 1.)

Plaintiff was responsible for managing and supervising all of his Branch/Division personnel. (Compl. at ¶ 4.) Further, plaintiff was recognized as MSIC's printing, graphics, visual arts, and electronic publishing expert. (*Id.*) Plaintiff's responsibilities also required him to serve on or attend a number of U.S. government "intelligence community" work groups charged with developing electronic standards for text, graphics, and imagery to be used in agency electronic publications and visual arts materials within the intelligence community. (*Id.*)

On April 2, 1993, plaintiff submitted a "Memorandum of Record" to Dr. Joseph Holmes, the Director of MSIC, outlining "ongoing instances of discrimination being practiced upon himself and against two former subordinate Branch Chiefs." (*Id.* at ¶ 15; *see also* Stickles Aff. at p. 1.) Plaintiff filed his first Formal EEO Complaint regarding these allegations on May 3, 1994. (Compl. at ¶ 34; Stickles Aff. at pp. 4, 8-9.) Plaintiff then filed his second informal complaint with an MSIC EEO Counselor on or about December 15, 1994. (Stickles Aff. at 9-10.) On

---

[1] Plaintiff was promoted a GG-14 pay grade on July 23, 1995. (Compl. at ¶ 3.)

March 19, 1995, plaintiff filed a second Formal EEO Complaint on March 19, 1995. (Compl. at ¶ 35; Stickles Aff. at pp. 10-11.)

On June 2, 1995, and September 27, 1995, the reports of the investigation finding no evidence of discrimination as to plaintiff's allegations were sent to the DIA. (Decl. of Leslie A. Tourigny[2] ("Tourigny Decl.") at Ex. 2.) The DIA then sent these reports to plaintiff on July 7, 1995, and October 5, 1995. (*Id.*) Because the completion of the formal complaint phase of the EEOC procedure adopted by the DIA and MSIC failed to bring satisfactory results for plaintiff, he filed a request for hearing by an Equal Employment Opportunity Commission ("EEOC") administrative law judge. (Compl. at ¶ 37.) Plaintiff also filed a Motion to Consolidate the two complaints on April 4, 1996. (Compl. at ¶ 36.)

Plaintiff's case was originally assigned to Administrative Law Judge Brenda Montgomery-Pompey ("Montgomery-Pompey"). (Compl. at ¶ 40.) On or about December 28, 1997, Montgomery-Pompey advised the parties that she was retiring and re-entering private practice. (Compl. at ¶ 42; Stickles Aff. at p. 4.) In November or December of 1998, plaintiff received correspondence from Administrative Law Judge Clarence Bell ("Bell") indicating that Bell had been reassigned to plaintiff's case. (Compl. at ¶ 43; Stickles Aff. at p. 4.)

The EEOC issued a Final Agency Decision on February 12, 1999. (Compl. ¶ 48; Tourigny Decl. at ¶ 3, Ex. 2.) Barbara Stickles, on behalf of plaintiff, received a copy of the Final Agency Decision along with plaintiff's appeal rights on February 23, 1999. (Tourigny

---

[2] Leslie A. Tourigny is the Chief of the Complaints Processing and Equal Opportunity Team within the Diversity Management and Equal Opportunity Office at the DIA. (Tourigny Decl. at ¶ 1.)

Decl. at ¶ 3-4, Ex. 1-5.) Additionally, Paula R. Anderson, on behalf of plaintiff's counsel, Raymond A. Waldrop, Jr., received a copy of the Final Agency Decision along with plaintiff's appeal rights on February 24, 1999. (*Id.*) The decision advised plaintiff that, in order to appeal the decision, he had to file a civil action within ninety days of receipt of the decision. (*Id.* at ¶ 3-4, Ex. 3.)

Plaintiff commenced this action on December 2, 1999, more than 280 days after receipt of the Final Agency Decision. Plaintiff contends in his Complaint that the temporary non-competitive promotion of Libby Bevel ("Bevel") in November/December of 1991, the non-competitive promotion of Annette Cooper ("Cooper") on February 23, 1993, which was retroactive to December of 1991, and the lateral transfer of Patricia Brown ("Brown") in April of 1993,[3] violate the Equal Pay Act. (Compl. at ¶¶ 12-14, 20-22.) Plaintiff also alleges that Ivey O. Drewery's ("Drewery")[4] September 1993 promotion to a non-supervisory GG-14 grade rank and Darrell P. Neal's ("Neal") May 29, 1994 promotion to a non-supervisory GG-14 grade rank violate the ADEA. (Compl. at ¶¶ 17-18, 23-25.) Additionally, plaintiff contends that his immediate supervisor, Annette Smiley ("Smiley"), "routinely and deliberately harassed and attempted to intimidate the Plaintiff from April 1993 until the date of her retirement from MSIC in December 1994." (*Id.* at ¶ 16; *see also id.* at ¶ 26.) Plaintiff contends that the Agency's actions also violate Title VII. (*Id.* at ¶ 52.) Finally, plaintiff asserts a § 1983 claim, alleging that

---

[3] Plaintiff states that Brown was promoted in April of 1992 in paragraph eight of his Complaint, but in paragraph fourteen of his Complaint, he states that Brown was promoted in April of 1993. (*See* Compl. at ¶¶ 8, 14.)

[4] The court notes that plaintiff offers two different spelling for this name. For consistency purposes, the court will use "Drewery." (*See* Compl. at ¶ 17.)

"the enforcement of the Agency's standard-less process issuing a final decision in the face of the objections of the Plaintiff so as to deny the Plaintiff a hearing on the merits violates his right of substantive and procedural due process guaranteed by the 14th Amendment." (Compl. at ¶¶ 49-51.) For the reasons set forth below, the court is of the opinion that plaintiff's Complaint is due to be dismissed.

## II.  APPLICABLE STANDARDS

Defendant filed a Motion to Dismiss on February 1, 2000. Plaintiff submitted an affidavit pertaining to the timeliness issue along with the brief in support of the Motion. The court afforded plaintiff ample opportunity to respond. Plaintiff responded, on March 31, 2000. Plaintiff also submitted an affidavit along with his brief in opposition to defendant's Motion. Defendant then filed a Supplemental Motion to Dismiss Equal Pay Act Claim on May 1, 2000, pursuant to Rule 12(b)(1), and the court held oral argument on both motions on July 6, 2000.

If "matters outside the pleading are presented to and not excluded by the court, a Rule 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). It is within the court's discretion to decide whether to consider matters outside of the pleadings that are presented to the court. *Jones v. Automobile Ins. Co. of Hartford, Connecticut*, 917 F.2d 1528, 1531 (11th Cir. 1990). Once the court considers matters outside the complaint, the Rule 12(b)(6) motion to dismiss is converted into a motion for summary judgment. Fed.R.Civ.P. 12(b).[5]  As discussed below, defendant's

---

[5] Before a district court may convert a motion to dismiss into a motion for summary judgment, it must notify the parties and allow the parties ten days to submit any relevant

5

Motion to Dismiss Counts I and IV are due to be dismissed pursuant to Rule 12(b)(1). However, because defendant moved to dismiss all counts pursuant to 12(b)(6) and presented matters outside the pleadings, the court will treat defendant's motions as motions for summary judgment.[6]

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

evidence and arguments in support of or in opposition to the merits. *Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1568 (11th Cir.1986), *rev'd on other grounds*, 932 F.2d 1370 (11th Cir.1991). However, as the panel noted in *Marine Coatings*, this circuit has recognized an exception to the ten days notice requirement when the "parties are aware of the court's intent to consider matters outside the record and have presented all the materials and arguments they would have if proper notice had been given. . . . " *Id.* (*citing Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir.1985)). Both parties submitted additional materials in conjunction with their briefs. It cannot be seriously contested that the parties did not make all available arguments and submit all the evidence they would have submitted had they received notice under Rule 56. *See Property Management & Investments, Inc.*, 752 F.2d at 605 (notice not required where "all of the parties were well aware that the judge was converting this 12(b)(6) motion and . . . made all the arguments and submitted all the documents that they would have presented had they received the notice to which they were entitled").

[6] As noted, defendant's Supplemental Motion actually seeks to dismiss the EPA claim pursuant to Rule 12(b)(1). However, for the sake of simplicity, the court will treat both motions as motions for summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III.   DISCUSSION

#### A.   EQUAL PAY ACT CLAIM

Although not necessary for the court's decision on this claim given the disposition to follow, the court notes that it appears that the allegations of the Complaint pertaining to claims under the Equal Pay Act are not pleaded with the specificity required by Rule 8(a), Fed.R.Civ.P. This rule requires that a "pleading which sets forth a claim for relief . . . shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P 8(a)(2). Plaintiff has failed to provide such in his Complaint.

##### 1.   *Statute of Limitations*

Claims under the Equal Pay Act must be made within two years or, if the violation is willful, within three years of the alleged violation. 29 U.S.C. § 255(a). Plaintiff's alleged violations of the Equal Pay Act occurred in November/December of 1991, February of 1993, and April of 1993. (Compl. at ¶¶ 12-14.) In each alleged violation, plaintiff alleges that he should have been paid at the GG-14 level, allegedly the level at which the three named females were

paid, because their jobs entailed the same type of work that he was performing. (*Id.*)

Plaintiff was aware of these alleged violations of the Equal Pay Act at least by April 2, 1993, when he submitted a memorandum to the Director of the MSIC outlining "ongoing instances of discrimination being practiced upon himself and against two former subordinate Branch Chiefs." (*See id.* at ¶ 15.) Plaintiff asserted that this practice had been continuing "for the past five years." (*Id.*) The memorandum specifically referenced alleged violations of the Equal Pay Act.[7] (*Id.*) Plaintiff himself was promoted to the GG-14 level on July 23, 1995, (*Id.* at ¶ 3), thereby ending any disparity in pay levels. Plaintiff filed this civil action on December 2, 1999, more than six and one-half years after the most recent alleged violation, and more than four and one-half years after the alleged discrepancy in pay levels ceased.

Exhaustion of administrative remedies is not required for Equal Pay Act claims. *See* 29 C.F.R. §§ 1614.408, 1614.409. Yet, in attempting to explain his late filing, plaintiff points to the administrative EEO process. (*See* Opposition to Motion to Dismiss at ¶ 4; Memorandum in Opposition to Motion to Dismiss ("Pl.'s Br.") at p. 3-6; Stickles Aff.) Plaintiff alleges:

---

[7] Paragraph 15 of plaintiff's Complaint asserts:

On April 2, 1993, the Plaintiff submitted a "Memorandum For Record" to the Director of MSIC, Dr. Joseph Holmes. In the Plaintiff's "Memorandum For Record," he outlined ongoing instances of discrimination being practiced upon himself and against two former subordinate Branch Chiefs. The plaintiff outlined for Dr. Holmes violations of the *Equal Pay Act of 1963* as well as violations of the *Age Discrimination in [E]mployment Act (ADEA) of 1967* that were being perpetrated on him and other/former supervisors within MSIC. Specifically, the Plaintiff stated that he had been the victim of exclusionary personnel practices, disparity of treatment and discrimination by senior upper-level MSIC management for the past five years. (Emphasis in original.)

> [D]uring the entire EEO process the Defendant agency continually failed to timely comply with its own promulgated guidelines for processing all stages of the EEO process. In fact, Defendant never met a single deadline in processing the plaintiff's complaint.

(Pl.'s Br. at 3; *see also* Stickles Aff. at p. 4-5.) Further, in his Affidavit, plaintiff alleges that he did not file an EEO claim in April of 1993, because he was advised not to do so by unnamed "MICOM EEO specialists." (Stickles Aff. at p. 2.) Plaintiff states that he was advised to wait until the Directors Advisory Review Board ("DARB") announced the fiscal year 1993 GG-14 promotions. (*Id.*) Assuming that these allegations are true for purposes of this motion, fiscal year 1993 for the Federal government extended from October 1, 1992, through September 30, 1993. 2 U.S.C. § 900(c)(12). Thus, any promotions for fiscal year 1993 had to be announced no later than September 30, 1993. When plaintiff was not promoted at that time, he should have had sufficient knowledge to prompt him to file an Equal Pay Act claim. Yet, plaintiff did not file this lawsuit until December 2, 1999. Thus, even assuming the facts in plaintiff's Affidavit are true, there is still no basis for allowing him to avoid the bar of the statute of limitations.

Plaintiff alleges that his claims are not time barred because separate actionable instances of discrimination occur each time he receives a new retirement check. (Pl.'s Br. at 1-3.) To support his argument, plaintiff cites *Anderson v. Zubieta,* 180 F.3d 329 (D.C. Cir. 1999), in which the court stated:

> As a unanimous Supreme Court said in *Bazemore v. Friday,* "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior" to the limitations period. 478 U.S. 385, 395 . . . (1986) (Brennan, J., concurring, joined by all other Members of the Court). The Courts of Appeals have repeatedly reached the same conclusion.

(Pl.'s Br. at 2; *see also* 180 F.3d at 400.) Although the theory of continuing violations has been

applied consistently to actions under the Equal Pay Act, *see, e.g., Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050 (5th Cir. 1973), the court is of the opinion that it is not applicable to the facts of this case.

"In determining whether a discriminatory employment practice constitutes a continuing violation, [the Eleventh] Circuit distinguishes between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does." *Thigpen v. Bibb County, Georgia, Sheriff's Dep't,* 216 F.3d 1314, 1326 (11th Cir. 2000) (citation and quotation marks omitted). The continuing violation doctrine typically applies in situations in which the employer covertly follows a practice of discrimination over an extended period of time. *Grice v. Air Products and Chemicals, Inc,* 2000 WL 353010, at * 4 (N.D. Fla. Feb. 17, 2000) (citing *Jones v. Merchants National Bank & Trust Co.,* 42 F.3d 1054, 1058 (7th Cir. 1994)). Further, the "continuing violation doctrine does not exist to give an employee who allowed a legitimate claim to lapse a second chance to file the claim." *Lewis v. Board of Trustees of Alabama State Univ.,* 874 F.Supp. 1299, 1303 (M.D. Ala. 1995). "Stale claims may remain just that, even if there are some continuing consequences of the discriminatory act." *Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261, 1270 (M.D Ala. 1998) (citing *Knight v. Columbus, Ga.,* 19 F.3d 579, 580-81 (11th Cir. 1994)).

The facts pertaining to plaintiff's claims in the present claim are analogous to the facts of *Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793 (11th Cir. 1988) (modified 850 F.2d 1549 (11th Cir. 1988)). In *Roberts,* the Eleventh Circuit declined to apply the continuing violation doctrine to allow the plaintiff who was found to be discriminatorily denied a promotion in 1981 to also claim he was discriminatorily denied the same promotion in 1978. The court stated:

> [The plaintiff] admitted he was aware of his rights in 1978. He could have asserted them at that time. To the extent that [the defendant] injured him on a continuing basis as a result of the 1978 incident, it was only because he knowingly failed to exercise his rights. A claim arising out of an injury which is "continuing" only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the 180-day [private sector] limitation period.

*Roberts,* 850 F.2d at 1550. The court can find no basis for distinguishing this basic principle as it pertains to Equal Pay Act claims. "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151 (1984).

The fact that plaintiff continues to receive retirement checks does not transform an allegedly single instance of intentional discrimination into acts which can be raised indefinitely. Thus, plaintiff's Equal Pay Act claims are barred by the applicable three-year statute of limitations because he failed to file a civil action until six and one-half years after he learned of the alleged disparity. Further, any alleged disparity ended on July 23, 1995, when plaintiff was promoted to a GG-14 pay grade, which was four and one-half years before plaintiff filed suit. The monetary impact in plaintiff's retirement checks does not transform the alleged discriminatory conduct into a continuing violation; rather, any discrepancy is merely the lingering effect of past allegedly unlawful acts.

    2.    *Subject Matter Jurisdiction*

Additionally, this court does not have subject matter jurisdiction over plaintiff's Equal Pay Act claim to the extent that the amount in controversy exceeds $10,000.00. The Court of Federal Claims has exclusive jurisdiction over an Equal Pay Act claim brought by a federal employee where the amount in controversy exceeds $10,000.00. 28 U.S.C. §§ 1346(a)(2), 1491;

11

*Barnes v. Levitt*, 118 F.3d 404, 410 (5th Cir. 1997), *cert. denied*, 523 U.S. 1136 (1998); *Warren v. Alexander*, 21 Fair Empl. Prac. Cas. 664 (N.D. Ga. 1979). In his Complaint, plaintiff does not specify a monetary amount being sought for this claim. However, in his Affidavit, plaintiff itemized significantly more that $10,000 as being at issue.[8] Thus, this court does not have subject matter jurisdiction over this claim and it must be dismissed pursuant to Rule 12(b)(1), Fed.R.Civ.P.

---

[8] At the very end of his Affidavit, plaintiff states:

> As a direct result of my not being promoted to GG-14 at the same time as Ms. Libby Bevel in November or December of 1992, and or as Ms. Annette Cooper in December 1991, I suffered the following financial damages:
>
> Annual "Cost of Living" federal pay raises for all government workers at GG-14 level in January 1992, 1993, 1994, 1995 and 1996 equaling approximately $25,000.00.
>
> Approximately three automatic within-grade/step increases for/to my GG-14: i.e. step 5 in December 1993: to a Step 6 in December 1995: to a Step 7 in December 1997 equaling approximately $18,000.00.
>
> Effect upon my "High Three years" pay for calculating my monthly retirement annuity equating approximately $2000.00 per month less retirement from the date of my retirement.
>
> The above outlined damages do not take into consideration that had I been promoted in 1991, the same time that Libby Bevel received her temporary promotion, I very well would have had sufficient time in grade to be eligible for and receive a promotion to GG-15 effective January 1994.

(Stickles Aff. at pp. 5-6.)

B.  **ADEA CLAIM**

   *1.  Statute of Limitations*

The statute of limitations for federal sector ADEA cases is the analogous limitations period from Title VII, 42 U.S.C. § 2000e-16(c). *Edwards v. Shalala*, 64 F.3d 601, 606 (11th Cir. 1995). The federal sector provision of Title VII, 42 U.S.C. § 2000e-16(c), provides that a present or former federal employee or applicant for employment may file a civil action "[w]ithin 90 days of receipt of notice of final action taken by a department, agency . . . ."[9]

The Final Agency Decision in this case was issued on February 12, 1999. (Compl. at ¶ 48; Tourigny Decl. at ¶ 3, Ex. 1.) Barbara Stickles, on behalf of Larry Stickles, received a copy of the Final Agency Decision along with information regarding plaintiff's appeal rights on February 23, 1999. (Tourigny Decl. at ¶ 3-4, Ex. 1-5.) Additionally, plaintiff's counsel received a separate copy of the decision with appeal rights on February 24, 1999. (*Id.*) The Final Agency Decision advised plaintiff that, in order to appeal this decision to a United States District Court, he had to file a civil action within **90** days of receipt of the decision. (*Id.*) Plaintiff filed this civil action on December 2, 1999, more than **280** days after receipt of the Final Agency Decision. Plaintiff has disputed none of these facts. Thus, plaintiff's age discrimination claims are clearly barred by the applicable statute of limitations.

---

[9] Unlike the Title VII bases of discrimination (race, color, religion, sex, and national origin), a plaintiff complaining of age discrimination who seeks to bypass the administrative complaint process can submit to the EEOC a notice of intent to sue, but such notice must be filed within 180 days after the alleged unlawful practice occurred. *Stevens v. Department of the Treasury*, 500 U.S. 1, 6-7 (1991) (interpreting 29 U.S.C. § 633a(d)). The requirements for submitting a notice of intent to sue to the EEOC are stated at 29 C.F.R. § 1614.201(a). There is no allegation or evidence that plaintiff provided the EEOC with notice of his intent to sue regarding alleged age discrimination.

2.  *Equitable Tolling*

Equitable tolling, if applicable, could allow the untimely suit to proceed, even against the federal defendant. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). However, plaintiff has asserted no basis for equitable tolling. According to the Supreme Court in *Irwin*:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. Because the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants.
>
> . . . [T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect.

*Irwin*, 498 U.S. at 96-97 (internal citations omitted). A review of the pertinent cases establishes that the principles of equitable tolling as acknowledged by the Supreme Court and the Eleventh Circuit are strictly construed and rarely applied. *See, e.g., Justice v. United States*, 6 F.3d 1474, 1478-79 (11th Cir. 1993); *Irwin*, 498 U.S. at 95; *Bryant v. United States Dept. of Agriculture*, 967 F.2d 501 (11th Cir. 1992).

The doctrine of equitable tolling has been applied in certain cases where the employee had no reason to believe that he or she was a victim of unlawful discrimination, such as where the employer affirmatively conceals the discriminatory nature of its conduct or misleads the employee regarding the nature of her legal rights. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660-62 (11th Cir. 1993). The doctrine has also been applied where the EEOC provides misleading information to the employee that prevents him or her from meeting the applicable

14

filing requirements. *See, e.g., Lawrence v. Cooper Communications, Inc.,* 132 F.3d 447, 450-51 (8th Cir. 1998). It has also been applied to the time taken by a trial court to decide a motion for appointment of counsel filed within the statutory time limit. *Wrenn v. American Cast Iron Pipe Co.,* 575 F.2d 544, 546-47 (5th Cir. 1978). However, equitable tolling is not available where the employee is aware of the discriminatory nature of the alleged conduct and is knowledgeable about his or her legal rights. *See Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1435 (11th Cir. 1998); *Ross,* 980 F.2d at 660-61; *McClinton v. Alabama By-Products Corp.,* 743 F.2d 1483, 1486-87 (11th Cir. 1984). Further, equitable tolling is not available when the plaintiff fails to exercise due diligence. *Howell v. Dep't of the Army,* 975 F.Supp. 1293, 1301 (M.D. Ala. 1997) (citations omitted).

Plaintiff contends that defendant's alleged failure to follow its own deadlines in the processing of his EEO complaints "should be construed as a waiver of compliance with any deadline for the filing of suit as well as toll the running of the period of limitations based on equitable considerations." (Pl.'s Br. at p. 5.) Plaintiff has cited no authority for such a proposition. Plaintiff has not shown that the EEOC provided misleading information that prevented him from filing a complaint. As noted above, both plaintiff and plaintiff's counsel were informed that plaintiff had ninety days in which to file a complaint. The court sees no reason to apply the doctrine of equitable tolling to this case.

   3.  *Equitable Estoppel*

"The doctrine of equitable estoppel precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his position in reliance on the former's misrepresentation or failure to disclose some material fact."

*Federal Deposit Insurance Corp. v. Harrison,* 735 F.2d 408, 410 (11th Cir. 1984). The elements of estoppel include: (1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated. *Id.* at 413.

As to plaintiff's claim that principles of equitable estoppel, as opposed to equitable tolling, should apply to this case, the court notes that the United States Supreme Court and lower courts have been extremely reluctant to apply principles of equitable estoppel to the United States or its agencies. *See generally Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947); *United States v. Walcott*, 972 F.2d 323 (11th Cir. 1992); *United States v. Killough*, 848 F.2d 1523 (11th Cir. 1988). In fact, "[t]he government may not be estopped on the same terms as any other litigant." *Killough*, 848 F.2d at 1526, (citing *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60 (1984)).

In order for the government to be equitably estopped: (1) the traditional elements of equitable estoppel must exist; (2) the government must have been acting in its proprietary capacity as opposed to its sovereign capacity; and (3) the government's agent must have been acting within the scope of his or her authority. *Killough*, 848 F.2d at 1526. The Eleventh Circuit has noted:

> Proprietary governmental functions include essentially commercial transactions involving the purchase or sale of goods and services and other activities for the commercial benefit of a particular government agency. Whereas in its sovereign role, the government carries out unique governmental functions for the benefit of the whole public, in its proprietary capacity the government's activities are analogous to those of a private concern.

*Harrison*, 735 F.2d at 411. No proprietary function of the government is involved in the case at bar. No government agent did anything to dissuade plaintiff from filing his complaint in a timely manner. There is no indication in the record that the government's delay in processing plaintiff's administrative claim amounts to an act of affirmative misconduct which would estop the government from raising the statute of limitations defense. *See Marks v. Turnage,* 680 F.Supp. 1241, 1244 (N.D. Ill. 1988).

Thus, regardless of whether plaintiff's claim is considered under the concept of equitable tolling or the stricter concept of equitable estoppel, his age discrimination claim is barred because he failed to file within the applicable statute of limitations. Thus, plaintiff's ADEA claim is due to be dismissed.

### C. RETALIATION / TITLE VII

For precisely the same reasons enumerated in Section B, *supra*, plaintiff's Title VII discrimination claims are barred by the statute of limitations due to plaintiff's failure to file a civil action within ninety days of receipt of the agency's final decision on his administrative complaint. *See*, 42 U.S.C. § 2000e-16(c).[10] While plaintiff does not assert a statutory basis for his allegations of "retaliation, harassment and reprisals," (Compl. at ¶ 26), such claims would necessarily fall under Title VII, 42 U.S.C. § 2000e-16(c), or the Age Discrimination in Employment Act, 29 U.S.C. § 633a(c), and would therefore by barred by the statute of limitations.

---

[10] As noted above, the statute of limitations for federal sector ADEA cases is the analogous limitations period from Title VII, 42 U.S.C. § 2000e-16(c). *Edwards*, 64 F.3d at 606.

Plaintiff's citation to *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999),[11] is inapposite here. As noted in plaintiff's own summary of the case, in *Anderson*, the plaintiff sought to bring in a claim of retaliation occurring *after* initiation of suit. (Pl.'s Br. at p. 3.) The *Anderson* case stands for the proposition that a retaliation claim may be considered along with other claims when such retaliation is a *direct continuation* of conduct that is properly before the court. *See Anderson*, 190 F.3d at 938 ("Under these circumstances, we find no compelling reason to require yet another round of administrative activity and the filing of a separate lawsuit, when a lawsuit dealing with these directly related issues is already underway."). In this case, plaintiff asserts retaliation that occurred *prior* to the initiation of suit. Further, there are no other claims properly before the court to which plaintiff's retaliation claim could attach. Plaintiff's Title VII and retaliation claims are barred by the statute of limitations and must be dismissed.

### D. DUE PROCESS CLAIM

After enumerating criticisms of how the administrative process was conducted, plaintiff alleges that "the enforcement of the Agency's standard-less process issuing a final decision in the face of the objections of the Plaintiff so as to deny the Plaintiff a hearing on the merits violates his right of substantive and procedural due process guaranteed by the 14th Amendment."

---

[11] Although plaintiff cites Ninth Circuit law, which is not binding on this court, analogous law exists which is binding in the Eleventh Circuit. *See Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981) (holding that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court").

18

(Compl. at ¶ 49.)[12]  Plaintiff has pointed to no waiver of sovereign immunity allowing him to pursue such a claim against his federal employer. Thus, this claim must be dismissed for lack of subject matter jurisdiction.

### 1. § 1983

42 U.S.C. § 1983 provides no basis for subject matter jurisdiction as Title VII is the exclusive judicial remedy for claims of discrimination in federal employment. *Brown v. General Services Administration*, 425 U.S. 820, 835 (1976). Attempting to distinguish this claim as a procedural claim still results in no subject matter jurisdiction under the statute cited because there is absolutely no state action alleged or involved in this case. *See* 42 U.S.C. § 1983 (addressing deprivations by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any *State* or Territory or the District of Columbia") (emphasis added). The alleged actors here are federal employees rather than state employees. Thus, § 1983 is not applicable to the facts of this case.

### 2. *Civil Service Reform Act*

Further, plaintiff's allegations under Count IV of the Complaint are not cognizable under any other statute or theory of law. The United States Supreme Court and the Court of Appeals for the Eleventh Circuit have repeatedly held that, in the federal employer-employee context, the remedies provided in the Civil Service Reform Act ("CSRA"), which encompass the provisions of Title VII, are the exclusive remedies for violations of federal employment rights and

---

[12] As the Fourteenth Amendment applies to states, and not the Federal government, the court will assume for purposes of this analysis, that plaintiff has cited the Fifth Amendment due process clause.

privileges and the CSRA preempts any additional cause of action other than those permitted by Congress. *See United States v. Fausto*, 484 U.S. 439, 443-51, 455 (1988); *Bush v. Lucas*, 462 U.S. 367, 388-90 (1983); *Brown v. General Services Administration*, 425 U.S. 820, 832-835 (1976); *Stephens v. HHS*, 901 F.2d 1571, 1575 (11th Cir. 1990); *Broughton v. Courtney*, 861 F.2d 639, 643-44 (11th Cir. 1988); *Canino v. United States EEOC*, 707 F.2d 468, 472 (11th Cir. 1983). Plaintiff has not identified any other basis for jurisdiction of this claim. Thus, plaintiff's claim for violation of his due process rights must be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant's Motion to Dismiss and Supplemental Motion to Dismiss Equal Pay Act Claim, which the court converts to Motions for Summary Judgment, are due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 7th day of September, 2000.

*[signature]*
SHARON LOVELACE BLACKBURN
United States District Judge